IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

NACOE BROWN,
*Defendant.*

Criminal Action No. ELH-01-377

## MEMORANDUM OPINION

Nacoe Brown is serving a sentence of 300 months imprisonment for multiple bank robberies that he committed in 2001. Brown has been in custody since his arrest in July 2001. Through counsel, he has filed an "Emergency Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 157 (the "Motion"). The Motion is supported by ten exhibits, including defendant's medical records. ECF 157-1 to ECF 157-10. The government opposes the Motion (ECF 165) and has submitted two exhibits. ECF 167; ECF 167-1. Defendant has replied (ECF 171) and has submitted an additional exhibit. ECF 171-1.[1]

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall grant the Motion.

## I.   Factual Background[2]

---

[1] By Order of August 14, 2020 (ECF 162), I granted the "Consent Motion For Partial Stay And Briefing Schedule" (ECF 161), by which I stayed the briefing of that portion of the Motion that relies on sentencing disparity as a "compelling reason" for relief, pending the Fourth Circuit's decision in *United States v. Keith Bryant*, CCF-95-0202, 2020 WL 2085471 (D. Md. Apr. 30, 2020).

[2] The electronic docket is not available in this case until the entry of ECF 68 on August 12, 2008. However, I have reviewed the Chambers file of Judge Andre Davis, to whom the case was initially assigned, and Judge J. Frederick Motz, to whom the case was reassigned after Judge Davis was appointed to the U.S. Court of Appeals for the Fourth Circuit. The case was reassigned to me in April 2018, due to the retirement of Judge Motz.

On July 11, 2001, a grand jury in the District of Maryland returned an indictment charging Brown with two counts of bank robbery, in violation of 18 U.S.C. § 2113 (a), (d), and (f).  ECF 1.  A superseding indictment was returned on August 29, 2001, charging Brown with two additional counts of bank robbery.  ECF 13.

Brown elected to proceed to a jury trial.  *See* Docket.[3]  Judge Andre M. Davis, to whom the case was originally assigned, presided at the trial.  *See id.*  After a two-week trial, the jury convicted Brown as to Count Two (Bank Robbery of 5/11/01); Count Three (Bank Robbery of 4/4/01); and Count Four (Bank Robbery of 3/12/01).  But, the jury was unable to reach a verdict with regard to Count One (Bank Robbery of 6/8/2001).  ECF 23 (Verdict).

Prior to Brown's sentencing, the United States Probation Office completed a Presentence Report.  ECF 172 ("PSR").[4]  According to the PSR, Brown and his coconspirator, Kevin Hilliard, committed several bank robberies in 2001.  ECF 172, ¶¶ 7-9.[5]  Brown and Hilliard used force and intimidation in furtherance of their objectives, including the assault of bank employees by use of what appeared to be a dangerous weapon.  *Id.*  In actuality, the weapon was a toy gun.  ECF 165 at 17 n.12.

Pursuant to the sentencing Guidelines ("Guidelines" or "U.S.S.G."), Brown had a base offense level of 20 for each robbery.  ECF 172, ¶¶ 13, 21, 29.  Brown's offense level was increased by two, pursuant to U.S.S.G. § 3C1.1, for "obstruction of justice," because he

---

[3] The prosecutor, A.U.S.A. Jonathan Luna, died in 2003 and, to my knowledge, the circumstances of his death remain unsolved.  Brown's defense attorney, Kenneth Ravenell, is under federal indictment in Maryland on charges of conspiracy to commit racketeering, money laundering, and drug distribution.  *See United States v. Kenneth Ravenell*, LO-19-0449.

[4] Both counsel cited to the PSR but it is not electronically available, and neither side provided the Court with a copy.  Fortunately, I located a copy in the Chambers file and submitted it for docketing.  *See* ECF 172.

[5] Hilliard pled guilt to one count of bank robbery, in violation of 18 U.S.C. § 2113(a) and (f), and was sentenced to 50 months in prison.  ECF 172, ¶ 5.

attempted to escape federal custody pending trial in October 2001. *Id.* ¶¶ 19, 27, 35. And, because a dangerous weapon was brandished, three levels were added under U.S.S.G. § 2B3.1(b)(2)(E). *Id.* ¶¶ 16, 24, 32. With grouping, Brown had a combined offense level of 32. *Id.* ¶¶ 44, 45. But, because the instant crimes were bank robberies and Brown had four prior robbery convictions, *id.* ¶ 46, the PSR deemed Brown a Career Offender pursuant to § 4B1.1. *Id.* ¶ 46. As a result, Brown's offense level jumped two levels, to 34. *Id.* ¶ 48.

With 19 criminal history points (*id.* ¶ 62), and as a Career Offender, Brown had a Criminal History Category of VI. *Id.* ¶ 63. Based on an offense level of 34 and a Criminal History Category of VI, Brown's sentencing Guidelines called for a period of incarceration ranging from 262 to 300 months of imprisonment. *Id.* ¶ 70.[6]

Sentencing was held on December 13, 2002. *See* Docket. At the time, the Guidelines were mandatory; the Supreme Court had not yet decided *United States v. Booker*, 543 U.S. 221 (2005).

Brown, who was born in 1968, was 34 years old. ECF 157; ECF 172 at 1. He stood five feet, eleven inches tall and weighed 250 pounds. *Id.* ¶ 88. That equated to a BMI of 34.9. *See Calculate Your BMI*, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm. Brown's prior record reflected convictions for the following offenses: four robberies (one in 1984, age 16; three in 1985, age 17); second-degree rape (1985, age 17); escape (1991, age 23); and third-degree sex offense (1997, age 29). ECF 172, ¶¶ 51-61.

---

[6] If Brown were not a Career Offender, with an offense level of 32 and a Criminal History of VI, his Guidelines range would have been 210 to 262 months of imprisonment. ECF 157 at 18.

Pursuant to the Guidelines, Judge Davis imposed concurrent terms of imprisonment of 300 months per count.  ECF 31 (Judgment).  And, the defendant was required to pay restitution of $378,666.  *Id.*

Brown appealed, and raised numerous contentions. The Fourth Circuit affirmed Brown's conviction and sentence.  *See United States v. Brown*, 96 F. App'x 112 (4th Cir. 2004) (per curiam).  It said: "We have reviewed the record, together with Brown's claims on appeal, and find no basis on which to vacate his conviction or sentence." *Id.* at 113.

In 2005, and again in 2007, Brown, then self-represented, moved to vacate his sentence under 28 U.S.C. § 2255.  ECF 55; ECF 77.  Judge Davis denied both motions (ECF 63; ECF 85), and the Fourth Circuit affirmed both rulings.  ECF 65; ECF 100.

 On June 22, 2016, the Fourth Circuit authorized Brown to file a successive § 2255 motion based on *United States v. Johnson*, 576 U.S. 591 (2015).  ECF 109; ECF 157 at 4.  That motion (ECF 110), at the request of defense counsel, has been held in abeyance pending resolution of other cases in the Fourth Circuit that might be relevant.  *See* ECF 115; ECF 119; ECF 134; ECF 157 at 4.

Brown is now 52 years of age. ECF 157.  He is presently incarcerated at Victorville Medium I FCI.  *Id.* at 2.  Given that Brown was arrested on July 26, 2001, he has served more than 19 years in prison.  ECF 157-8 (Summary Reentry Plan – Progress Report).[7]  This equates to approximately 75% of his sentence, exclusive of good time credit under 18 U.S.C. § 3624(b). *Id.*  Accounting for good time credit, Brown has served about 90% of his sentence.  ECF 157 at 1.  He has a projected release date of May 24, 2023.  ECF 157-8.

---

[7] The PSR reflects an arrest date of July 26, 2001.  And, the Judgment (ECF 31) expressly gives credit from the date of arrest.  Yet, ECF 157-8 seems to indicate a start date for the sentence of December 13, 2002.

Brown first petitioned the Warden of Victorville FCI for compassionate relief on December 6, 2019. ECF 157 at 6. When he did not receive a response, Brown contacted the Warden again on January 19, 2020. Again, he did not receive a response. *Id.* Thereafter, on March 3, 2020, Brown, then self-represented, moved for a sentence reduction with this Court. *See* ECF 148. Thereafter, through appointed counsel, Brown filed the Motion at issue. ECF 157.

Because Brown's original request was filed before the pandemic, it did not reference COVID-19. ECF 157 at 6 n.5. But, on July 29, 2020, Brown's counsel filed a supplemental request with the Warden, seeking compassionate release on Brown's behalf due to COVID-19. ECF 157-10. The government does not dispute that Brown has met the minimum administrative prerequisite under § 3582(c)(1)(A). ECF 165 at 8.

Additional facts are included, *infra*.

## II. Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030

(1984).  Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See, e.g., Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying motion for compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

"When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, ___ F. App'x ___, 2020 WL 5412762, at * 1 (4th Cir. Sept. 9, 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age, in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

7

The Application Notes permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) **Medical Condition of the Defendant**.—
>
>> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence.  Application Note 1(C) concerns Family Circumstances.  Application Note 1(D) is titled "**Other Reasons.**"  It permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in

combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Court may not rely on the Program Statement, however. Rather, the Court must consider the Sentencing Commission's policy statements. *Taylor*, 2020 WL 5412762, at * 1.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827. But, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.   COVID-19[8]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). That crisis is COVID-

---

[8] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

19.[9]  The World Health Organization declared COVID-19 a global pandemic on March 11, 2020.
*See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic."  *United States v.
Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases).
Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the
pandemic.  *Id.*

That said, the Court must underscore that the virus is highly contagious.  *See Coronavirus
Disease 2019 (COVID-19), How COVID-19 Spreads*, Ctrs. For Disease Control &
Prevention (Apr. 2, 2020), https://bit.ly/2XoiDDh.  Moreover, although many people who are
stricken with the virus experience only mild or moderate symptoms, the virus can cause severe
medical problems as well as death, especially for those in "high-risk categories . . . ."  *Antietam
Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).  As of September 22, 2020,
COVID-19 has infected more than 6.8 million Americans and caused over 200,400 deaths in this
country.  *See COVID-19 Dashboard*, The Johns Hopkins Univ., https://bit.ly/2WD4XU9 (last
accessed Sept. 22, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced
since 1918.  *See United States v. Hernandez*, ___ F. Supp. 3d ___, 2020 WL 1684062, at *3
(S.D.N.Y. Apr. 2, 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to
free society for reasons that need no elaboration.").  The pandemic "has produced unparalleled
and exceptional circumstances affecting every aspect of life as we have known it."  *Cameron v.*

---

[9] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of
coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease
and the Virus that Causes It*, World Health Org., https://bit.ly/2UMC6uW (last accessed June
15, 2020).

*Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, ___ Fed. App'x ___, 2020 WL 3100187 (6th Cir. June 11, 2020).  Thus, for a significant period of time, life as we have known it came to a halt.  And, in view of the recent resurgence of the virus, many businesses, colleges, universities, and secondary schools are again facing restrictions or closure.

Unfortunately, there is currently no vaccine, cure, or proven treatment that is available. Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19.  *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type 2 diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a

compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma is an underlying medical condition that was moved to the new category by the CDC; it is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely");[10] *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

---

[10] The Court may take judicial notice of matters of public record. Fed. R. Evid. 201.

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19.  It has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19.  *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020).  Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281.  In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General.  *See* Pub. L. No. 116-136, § 12003(b)(2).  On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9.  Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus.  *Seth*, 2020 WL 2571168, at *2.  Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected.  *See* ECF 165 at 13-14 (detailing BOP's measures to thwart the spread of the virus).  Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

13

As with the country as a whole, however, the virus persists in penal institutions.[11]  As of September 22, 2020, the BOP had 126,798 federal inmates and 36,000 staff.  Also as of September 22, 2020, the BOP reported that 1,948 inmates and 672 BOP staff currently tested positive for COVID-19; 12,330 inmates and 1,099 staff had recovered from the virus; and 122 inmates and two staff member have died from the virus.  And, the BOP has completed 56,220 COVID-19 tests.  *See*  https://www.bop.gov/coronavirus/ (last accessed Sept. 22, 2020).  *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to Victorville Medium I FCI, where the defendant is a prisoner, as of September 22, 2020, the BOP reported that 38 inmates and 7 staff have currently tested positive for COVID-19, and 319 inmates and 10 staff have recovered at the facility.  *See* https://www.bop.gov/coronavirus/ (last accessed Sept. 22, 2020).  One inmate has passed away. *Id.*

## IV.    Discussion

Brown moves for compassionate release on two grounds.  ECF 157.  First, he asserts that his obesity, coupled with the conditions at Victorville FCI render him particularly vulnerable to COVID-19.  ECF 157 at 3.  Alternatively, Brown contends that the "marked disparity between the overly harsh sentence" he received in 2002 and the sentence he would receive today also constitute grounds for compassionate release.  *Id.* at 3.  As a result of changes in federal sentencing law, defendant posits, he would no longer be subject to the mandatory guidelines or a mandatory career offender enhancement.  *Id.* at 2.  Therefore, he believes the court "would likely

---

[11] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country.  Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

impose a substantial variance below the career offender guideline range."[12]  *Id.*  Further, he argues that the 18 U.S.C. § 3553(a) sentencing factors counsel in favor of reducing his sentence to time served.  *Id.* at 19-23.

The government concedes that the conditions at Victorville are "alarming" and Brown's obesity "could qualify him" for compassionate release.  ECF 165 at 9.  But, it contends that obesity alone, without any other medical issues, is not sufficiently compelling to merit relief under § 3582(c)(1)(A)(i).  *Id.* at 9-12, 14.  In any event, the government asserts that Brown is ineligible for release because he is a danger to the community.  *Id.* at 15-20.  And, the government maintains that the § 3553(a) factors militate against a reduction of Brown's sentence.  *Id.* at 20-21.

As an initial matter, Brown has presented a medical condition that, in light of COVID-19, qualifies as a compelling basis to grant compassionate release.   Brown's medical records and exhibits show that he is five feet, ten inches tall and weighs 269 pounds, with a BMI of approximately 39.  ECF 171 at 3; ECF 167 (medical records).  The CDC identifies obesity as a COVID-19 risk factor supported by the "strongest, most consistent evidence" drawn from multiple medical studies of the effects of the virus.  *Coronavirus Disease 2019 (COVID-19), Evidence Used to Update the List of Underlying Medical Conditions That Increase a Person's Risk of Severe Illness from COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 28, 2020), https://bit.ly/2PLhO2b.

---

[12] As noted, the parties have agreed to a partial stay with respect to Brown's claim as to whether the alleged sentencing disparity constitutes grounds for compassionate release, pending the Fourth Circuit's decision in *United States v. Keith Bryant, et al.*, Case Nos. 20-6869, 20-6875, 20-6877.  ECF 161; ECF 162. Accordingly, the Court will not reach this issue.  As discussed below, however, Brown's alleged sentencing disparity is clearly relevant to the Court's consideration of the factors set forth in 18 U.S.C. § 3553(a).

Moreover, numerous courts have found that, in light of the COVID-19 pandemic, severe obesity, and in particular a BMI above 30, qualifies as a compelling reason for compassionate release. *See, e.g., United States v. Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020) (finding obese defendant with a BMI of 32.5 qualified for compassionate release in light of COVID-19); *United States v. Staten*, PJM-01-284-4, 2020 WL 4904270, at *2 (D. Md. Aug. 18, 2020) (finding an "extraordinary and compelling reason" for compassionate release based on a BMI of 38); *United States v. Dawson*, No. 18-40085, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (granting compassionate release based on a defendant's obesity: "He has a medical condition (obesity) that the CDC recognizes puts him at an increased risk of developing serious illness if he were to become infected with COVID-19."); *United States v. Daniels*, No. 19-00709, 2020 WL 181342, at *2 (N.D. Cal. Apr. 9, 2020) (finding severe obesity constitutes compelling reason for release).

In addition, given the current number of cases at Victorville FCI, it cannot be disputed that the coronavirus has entered the prison. And, the fact that the virus has continued to spread despite the institution's "modified lockdown" indicates that the precautionary measures are not working. ECF 171 at 5; ECF 171-1 (Memo from Warden to Inmate Population re COVID-19 Precautionary Measures). Accordingly, I am satisfied that, given Brown's obesity, coupled with the rate of infection at Victorville FCI, he satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

The Court must next consider whether the defendant poses a danger to the community and the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). These factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just

punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent  Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

The government maintains that Brown presents a danger to the community and that the factors under 18 U.S.C. § 3553(a) militate against granting the Motion.  ECF 165 at 15-21. It argues that Brown is a "violent offender and a recidivist" because he was convicted of a "string of violent armed bank robberies" and "has an extensive, sometimes violent, criminal history." *Id.* at 16-18.  And, the specific danger posed by his release is that "his resort to robbery as a livelihood could reemerge and result in further incidents in the community."  *Id.* at 20.

As defendant notes, he was convicted and sentenced in 2002, when the Guidelines were mandatory.  Since then, the laws under which Brown received his 300-month sentence have changed.  The Supreme Court declared in 2005 that the Guidelines are merely advisory, such that a district court may now impose a sentence outside the prescribed range if warranted by the factors under 18 U.S.C. § 3553(a).  *See United States v. Booker*, 543 U.S. 221 (2005).  However, the government observes that Judge Davis's decision to sentence Brown to 300 months in prison was not driven by the mandatory nature of the Guidelines at the time.  ECF 165 at 21.  Judge Davis certainly could have imposed a sentence at the bottom of the Guidelines – 262 months. Instead, he imposed a sentence at the top of the applicable Guidelines range.

To be sure, the gravity of Brown's crimes cannot be minimized.  He was charged with serious offenses and, following a lengthy trial, he was convicted of three bank robberies. Moreover, his criminal history is extensive.

The majority of Brown's criminal history stems from conduct that occurred when he was an older teenager.  ECF 157 at 18; ECF 172, ¶¶ 51-60.  In particular, in 1985, Brown pleaded

guilty to four counts of robbery by way of purse snatchings.  The offenses were committed in 1984 and 1985, when he was 16 and 17 years of age.  ECF 157 at 18; ECF 172, ¶¶ 51-56. Notably, Brown was prosecuted as an adult for those offenses, and he was sentenced for all of the offenses in September 1985. *Id.*  He received concurrent terms of eight years' incarceration for two of the robberies and four years for the other two.  ECF 172, ¶¶ 51-56, 84.  Ultimately, Brown served approximately six years in prison.  *Id.*  He was also convicted in 1985 of second-degree rape, for which he was sentenced to seven years of imprisonment.  *Id.* ¶ 58.  And, he was sentenced to another two years in prison in 1997, after being convicted of a third-degree sex offense.  *Id.* ¶¶ 60, 61.

Brown was deemed to be a Career Offender based at least partially on the unarmed robberies he committed when he was 16 and 17 years old.  ECF 172, ¶ 64.  However, the defense does not argue that Brown was erroneously determined to be a Career Offender.  *Cf. United States v. Chambers*, 965 F.3d 667 (4th Cir. 2020); *United States v. Cleveland Laquincy Griffin*, __ F. App'x __, 2020 WL 5525777, at *1 (4th Cir. Sept. 15, 2020).  Under U.S.S.G. § 4B1.2(a), the term "crime of violence" means:

> [A]ny offense under federal or State law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion….

And, "robbery is a crime of violence regardless of the presence of a weapon."  *United States v. Davis*, 915 F.2d 132, 133 (4th Cir. 1990) (finding unarmed bank robbery was a "crime of violence" within the meaning of sentencing guideline on Career Offenders); *United States v. Waddell*, 18 F. App'x 155, 156 (4th Cir. 2001) (same).

Nevertheless, defendant contends that he should not have been prosecuted as an adult for the robberies under Maryland law because he was not armed and was under 18 years of age. ECF 157 at 18 (citing *Crosby v. State*, 71 Md. App. 56, 523 A.2d 1042, 1043–44 (1987) (quoting Md. Code (2013 Repl. Vol.), § 3-804(e) of the Cts. & Jud. Proc. Article); *United States v. Bradshaw*, 999 F.2d 798, 800 (4th Cir. 1993) ("The juvenile courts would retain jurisdiction over a juvenile charged with robbery that did not involve the use of a weapon.")).  And, Brown has already served a sentence that exceeds the top end of the Guidelines that would have applied if Brown had not been deemed a Career Offender.  However, under U.S.S.G. § 4B1.1(a), a prior felony conviction need not be an adult conviction to qualify as a Career Offender predicate.

In any event, Brown argues that Judge Davis might have sentenced him to less than the Guidelines range, given the opportunity.  *See* ECF 157 at 17-18 (citing statistics on typical sentences imposed for Career Offenders below mandatory guidelines).  But, that argument is at odds with Judge Davis's decision to sentence Brown at the top end of the Guidelines range, knowing that Brown committed several of his prior offences when he was a teenager.

Brown's behavior for the past 19 years, while in BOP custody, is an indicator of whether he remains a danger to the community.  Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'"  *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)); *see also United States v. Scott*, CCB-95-202, 2020 WL 2467425, at *4 (D. Md. May 13, 2020).

In this regard, it is noteworthy that Brown does not appear to accept responsibility for his criminal conduct.  As noted, in 2005 and 2007, Brown filed motions to vacate under 28 U.S.C. § 2255.  ECF 55; ECF 77.  He argued, *inter alia*, that he was entitled to a new trial because

$30,000 in cash disappeared from evidence during his trial.  *See* ECF 171 at 8.  Brown also suggested that the prosecutor, who is now deceased, stole that money. *See id.*  According to the government, the defendant also "attack[ed] the integrity of the Honorable Judges Davis and Motz" in his pleadings.  ECF 165 at 2.[13]  The defendant responds that he was just noting that "Judges Davis and Motz were interviewed by the FBI [about the disappearance of the money], and suggested that they should have been recused from his case as a result." ECF 171 at 9.

Brown appears to cast blame on everyone but himself.  He has been relentless, if not vexatious, in filing motions challenging various aspects of his case and in seeking relief.  *See, e.g.*, ECF 60; ECF 67; ECF 70; ECF 76; ECF 82; ECF 90; ECF 92; ECF 98; ECF 102; ECF 103; ECF 104; ECF 107; ECF 112; ECF 121; ECF 126; ECF 127; ECF 128; ECF 137; ECF 138; ECF 140; ECF 148.

The Court would never criticize a defendant's zealous pursuit of a claim of innocence.  Nor do I criticize Brown's quest for his freedom.  Indeed, his persistence is admirable.  But, in light of the evidence of guilt, his apparent failure to accept responsibility is a concern, because acceptance of responsibility for misconduct is an important step on the road to becoming a law-abiding citizen.

Nevertheless, it is also significant that, over the course of more than 19 years in prison, Brown has incurred only a few minor infractions.  ECF 157 at 21; ECF 167-1 (disciplinary record).  And, as defendant notes, none of the infractions indicate that the defendant has engaged in violence while incarcerated.  *Id.*  Moreover, Brown has not incurred a single disciplinary infraction in the last four years.  ECF 157-8. This reflects Brown's maturation and control.

---

[13] Correspondence in the Chambers file supports the government's assertion.

And, beyond staying out of trouble, Brown has also bettered himself and endeavored to better others. To illustrate, he has obtained his GED and has successfully completed and taught a number of education classes. ECF 157 at 19-20; ECF 157-8. He has also written a number of books, and he has become a spiritual mentor for numerous other inmates. *Id.* In addition to the letter of support from Mr. Brown's wife of 26 years (ECF 157-1), several of Brown's fellow prisoners have written on his behalf, noting that Brown has mentored and counseled them. ECF 157 at 20; ECF 157-2 to ECF 157-6.

For instance, Antonio Epsey, a former prisoner, said that Brown "has not only been a father to his own children, but he has fathered every man he has come in contact with. Nacoe help [sic] me to become the man I am today. He put me on a path of righteousness to the point where I began to change my thinking." ECF 157-2. And, Doyle Lee, another former prisoner, stated: "[A]s a result of knowing and meeting Nacoe and what he taught me I am presently fulfilling my goals as a productive member to our society. I am equitably employed, married, a landlord/property owner, minister and mentor at our Church. Nacoe's leadership, mentoring, friendship and counseling has helped to shape and mold me…" ECF 157-3.

Most significant, Brown, who is 52, has already served over 19 years in prison, amounting to approximately 75% of his 25-year sentence, exclusive of good conduct credit. ECF 157-8. Factoring in credit for good conduct, Brown has served about 90% of his sentence, and has approximately 31 months until his release. *Id.* And, the BOP could release him months earlier to a residential reentry placement. *Id.* at 3.

Finally, Brown's incarceration in the midst of a global pandemic has "sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction." *United States v. Green*,

TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020); *see also United States v. Park*, No. 16-cr-00473, 2020 WL 1970603, at *5 (S.D.N.Y. Apr. 24, 2020) (noting that a sentence "that was sufficient but no greater than necessary" may now, in light of COVID-19, become "one immeasurably greater than necessary"). Thus, given defendant's incarceration for almost two decades, a 31-month reduction of his sentence will not undermine the goals of deterrence, retribution, or rehabilitation. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 430-31 (S.D.N.Y. 2020) (explaining that courts should assess under § 3553(a) "whether compassionate release would undermine the goals of the original sentence").

Accordingly, I find that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing Brown's sentence to time served plus fourteen days, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), with the added requirement of one year of home confinement as a condition of supervised release, to be followed by four years of supervised release.

## V.   Conclusion

For the forgoing reasons, I shall grant the Motion (ECF 157).

An Order follows, consistent with this Memorandum Opinion.

Date:   September 25, 2020                                   _____/s/_____
                                                            Ellen Lipton Hollander
                                                            United States District Judge